1
2
3
4

Phil S. Flemming (#014778)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@robainalaw.com

5   Attorneys for Plaintiff

6              IN THE UNITED STATES DISTRICT COURT

7                      DISTRICT OF ARIZONA

| 8 Tristan Young, an individual, | |
|---|---|
| 9                       Plaintiff | No. |
| 10 v. | **COMPLAINT** |
| 11 Arizona Summit Law School, LLC, a | **(Americans with Disabilities Act;** |
| 12 Delaware limited liability company, and Infilaw Corporation, a Delaware | **Rehabilitation Act; Negligent Misrepresentation; Common Law** |
| 13 corporation, | **Fraud)** |
| 14                       Defendants. | **Jury Trial Demanded** |
| 15 | |
| 16 | |

17        Plaintiff, Tristan Young, by undersigned counsel, for her Complaint against

18   Arizona Summit Law School, LLC (formerly Phoenix School of Law) and Infilaw

19   Corporation alleges as follows:

20                        **NATURE OF ACTION**

21        1.      This is an action seeking money damages and equitable relief for violations

22   of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA") and

23   Section 504 of the Rehabilitation Act of 1972 ("Rehabilitation Act"), 29 U.S.C. § 794, *et*

24   *seq*., and for negligent representation and common law fraud against Defendants.

25                  **PARTIES, JURISDICTION AND VENUE**

26        2.      Ms. Young is a United States citizen who at all relevant times resided in

27   Maricopa County, Arizona.

28        3.      Defendant Arizona Summit Law School, LLC ("ASLS") is a Delaware

1    limited liability company offering private legal education in Arizona. ASLS is licensed

2    by the Arizona State Board for Private and Post-Secondary Education and the American

3    Bar Association.

4         4.      Defendant Infilaw Corporation, the parent corporation of ASLS, is a

5    Delaware corporation with headquarters in Naples Florida.

6         5.      At all relevant times, ASLS caused events to occur in Maricopa County,

7    Arizona, out of which this action arises.

8         6.      At all relevant times, ASLS was a "place of public accommodation" for

9    purposes of 42 U.S.C. 12182(a) and a "program or activity receiving federal financial

10   assistance for purposes of 29 U.S.C. § 794(a).

11        7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because

12   this action arises under the laws of the United States, specifically, Title III of the

13   Americans with Disabilities Act, 42 U.S.C. § 12182 and Section 504 of the Rehabilitation

14   Act of 1972, 29 U.S.C. § 794, *et seq*.

15        8.      Supplemental jurisdiction over Ms. Young's state law claims are proper

16   pursuant to 28 U.S.C. § 1367.

17        9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because

18   the events giving rise to the claims occurred in this District.

19                          **FACTUAL BACKGROUND**

20        10.     Ms. Young incorporates all other paragraphs in this Complaint as though

21   fully set forth herein.

22        11.     ASLS is a private, for-profit law school located in Phoenix, Arizona.

23        12.     Infilaw if a for profit corporation that operates three private law schools

24   including ASLS.

25        13.     Infilaw retains significant control of ASLS' operations by, among other

26   things, maintaining control over academic matters and promulgating policies and

27   procedures by which ASLS is operated, including the Student Handbook.

28   *///*

14.     ASLS is known for admitting students into its law school program who are unable to obtain admittance at other schools because of poor grades or low LSAT scores.

15.     Tuition for full-time students at ASLS is in excess of $45,000 annually and is in excess of $35,000 annually for part-time students.

16.     Ms. Young took the LSAT on three occasions, earning a 136 each time.

17.     Despite that the score was lower than even ASLS typically admits, ASLS recruited Ms. Young in the Spring of 2013 and invited her to participate in its AAMPLE program, claiming she was an "excellent candidate."

18.     AAMPLE is an "Alternative Admissions Model for Legal Education" that allows certain otherwise unqualified students to gain admission to a law participating law school by passing a pre-admission program designed to provide students insight into the rigors of first-year law school courses.

19.     ASLS promised Ms. Young a quality education, boasting a focus on "student centered" outcomes, a bar passage rate exceeding 80% and a 97% employment rate of its graduates.

20.     Ms. Young received multiple emails and marketing materials advertising the school's fast track to ABA Accreditation as well as its 80+% bar pass rate.

21.     Ms. Young also reviewed the Law School Admission Council's website and the ASLS website.

22.     Although skeptical of the extremely high cost of attendance at ASLS and the negative reviews she read about the school, she was convinced to attend ASLS based on the representations related to bar passage and post-graduate employment.

23.     Based on ASLS' representations and marketing materials she believed she had a good chance of succeeding in law school, passing a bar examination on the first try and obtaining a post-graduation position practicing law in either public or private practice.

///

///

3

24. Ms. Young accepted enrollment into the AAMPLE Program, passed, and commenced traditional law school course work as a part-time student at ASLS in the Fall of 2013.

25. Ms. Young has a history of Dyslexia, Attention Deficit Hyperactivity Disorder, Reading and Mathematics Disorders, General Anxiety Disorder, and Bipolar II Disorder.

26. In an effort to receive educational accommodations for the AAMPLE program and in law school, Ms. Young submitted an evaluation and recommendation for accommodations from licensed clinical psychologist, Jeremy Sharp, PhD.

27. In his evaluation, Dr. Sharp documented Ms. Young's diagnoses and learning difficulties and recommended ASLS afford Ms. Young additional time on tests, separate testing area, proofreading assistance, advance copies of professor notes/overheads, and for tests to be read to her.

28. For its part, ASLS retained psychology consultant Sandra M. Graff to review either accept or make other recommendations for Ms. Young.

29. In her "File Review of Disability Accommodations Request," Ms. Graff agreed with Dr. Sharp's recommendations, finding them "properly supported and appropriate."

30. Ms. Young was advised that ASLS would provide the accommodations.

**Ms. Young was Academically Dismissed and Reinstated Four Times**

31. ASLS instituted an Infilaw wide curriculum change in Fall 2013.

32. Under ASLS' new curriculum, traditional law school courses such as Torts, Contracts, Research and Writing and Criminal Law were omitted from the first year curriculum in favor of courses such as "Law School Foundations" and "Introduction to Criminal Practice and Writing."

33. The courses were significantly different than the courses taught through the AAMPLE program.

///

34.     In addition to changing the curriculum, ASLS instituted a new grading policy whereby many courses were pass/fail and graded courses were weighted differently than a traditional law school.

35.     Ms. Young took four classes during the Fall 2013 semester.

36.     ASLS' Accommodations Director, Debra Love, ensured Ms. Young received additional time on tests in a separate and quiet testing facility and that she was not subject to pop quizzes.

37.     Ms. Love also proofread Ms. Young's ScanTron sheets and written examination responses.

38.     Ms. Young passed all of her classes during the Fall 2013 semester.

39.     Two courses were pass/fail.  She received a C+ in a three credit course and a C- in a five credit course.

40.     Because of the weighting of the new courses Ms. Young did not achieve a 2.0 grade point average and was placed on academic probation.

41.     After achieving a 2.33 grade point average in the Spring 2014 semester, Ms. Young was placed back in good academic standing with ASLS.

42.     During the Summer 2014 semester, Ms. Young failed a class and earned only a 1.36 grade point average, lowering her cumulative grade point average to 1.83. She was placed back on academic probation.

43.     During the Summer and Fall of 2014, Ms. Young suffered a personal trauma of which ASLS was fully aware.

44.     The personal trauma negatively affected Ms. Young's disabilities and grades.

45.     Also in 2014, Ms. Love left ASLS and was replaced by Sandra Ericson.

46.     During the Fall 2014, Ms. Young was required to take pop quizzes.

47.     When Ms. Ericson was made aware of the pop quizzes, she asked the professor to remove Ms. Young from the requirement.

///

48.     Although no longer subject to pop quizzes, Ms. Young's grade was negatively impacted by the pop quizzes previously taken.

49.     In addition, as of Fall 2014, Ms. Young was no longer provided proofreading assistance.

50.     On her Fall 2014 Evidence mid-term examination, Ms. Young made an error when entering her Blind Grading Number ("BGN") onto her ScanTron sheet.

51.     Before the mid-term examination, Professor Mitchell Fleischman warned that any student whose BGN was entered incorrectly would receive a 25-point deduction on the mid-term exam because, in his opinion, "If you can't fill out a Scantron sheet correctly, then you have no business being an attorney."

52.     Ms. Young's error resulted in a 25-point deduction, and an overall grade of C- in the class.

53.     When Ms. Young discovered the BGN error, she discussed her disabilities and the accommodations she was supposed to receive with Professor Fleischman who agreed to return the 25 points so long as the then Dean of Student Services, Therese Brown agreed.

54.     Ms. Brown refused to allow Professor Fleischman to alter Ms. Young's grade stating that proofreading was not an accommodation.

55.     Had the accommodation been provided, as it was in prior semesters, per Professor Fleischman, Ms. Young would have received a C+ or B- grade.

56.     Either grade would have been enough to raise her cumulative grade point average to a 2.0.

57.     Instead, Ms. Young was academically dismissed on January 16, 2015.

58.     Per ASLS policy Ms. Young petitioned for reinstatement.

59.     The ASLS Student Handbook at Sections 2.4.8.2 and 2.4.8.3 requires students seeking reinstatement to demonstrate specifically:

a)     that extenuating circumstances leading to the student's deficient academic performance existed;

6

b)      that those circumstances no longer exist;

c)      a detailed plan for academic success upon reinstatement, including the student's responsibility for assuring such success;

d)      that the student's record contains sufficient indicators of future success in law school and the ability to pass a bar examination.

60.     In her petition for reinstatement, Ms. Young cited "extenuating circumstances" related to the extreme personal trauma of which ASLS was aware.

61.     Ms. Young avowed that the extenuating circumstances no longer existed and that she had a plan for academic success.

62.     On February 2, 2015, Ms. Young was reinstated based on the Academic Standards Committee's ("Committee") determination that "extenuating circumstances detrimental to satisfactory performance substantially hindered [Ms. Young]" and that those circumstances were no longer present.

63.     In addition, the Committee opined that Ms. Young would be able to achieve a cumulative 2.0 grade point average.

64.     At the time Ms. Young petitioned for reinstatement, she also became aware that ASLS graduates were not passing the Arizona bar examination.

65.     ASLS' Arizona bar pass rates were less than 55% for first time takers in February 2014, and only 48.8% overall.

66.     ASLS' Arizona bar pass rates were 54.7% for first time takers in July 2014 and 49.7% overall.

67.     Ms. Young was concerned about her own ability to pass a bar examination, in particular given her personal academic struggles at ASLS.

68.     Ms. Young considered discontinuing her education at ASLS but was continually reassured that despite the numbers reported by the Committee on Bar Examinations that ASLS' bar pass rate exceeded 80%.

69.     During a town hall meeting, Dean Shirley Mays represented to students that bar pass rates were not as bad as they appeared and that the students were to blame based

on their lack of effort.

70.     The next semester, Spring 2015, ASLS again failed to appropriately accommodate Ms. Young when the proctor arrived to the testing site fifteen minutes late and made multiple interruptions and errors forcing Ms. Young to start and restart her Advanced Property Law examination three times.

71.     As a result, Ms. Young was tested for nearly six hours, after which she was suffering severe symptoms of anxiety.

72.     Ms. Young scored poorly on the Advanced Property Law examination and earned a D grade in the course.

73.     Despite the testing interruptions and errors not caused by Ms. Young, ASLS denied her grade appeal citing ASLS' policy that the grade was not the result of a "computation error, arbitrariness, or animus" toward Ms. Young.

74.     Ms. Young was academically dismissed.

75.     Although her dismissal was not the result of "extenuating circumstances," as before, Ms. Young petitioned for reinstatement.

76.     To her surprise, on June 26, 2015, ASLS reinstated Ms. Young citing "extenuating circumstances that were no longer present" and the ability to earn a 2.0 cumulative grade point average.

77.     Ms. Young took a pass/fail course during the Summer 2015 Intersession and achieved a 2.05 grade point average for course work during the Summer 2015 semester.

78.     Ms. Young's cumulative grade point average after the Summer 2015 semester remained below a 2.0.

79.     Ms. Young was academically dismissed on September 3, 2015.

80.     Ms. Young again petitioned for reinstatement despite having no "extenuating circumstances hindering" her performance.

81.     Ms. Young was reinstated on September 10, 2015 citing "extenuating circumstances" hindering Ms. Young's performance that no longer exist, and stating that

1   she would be able to achieve a cumulative minimum 2.0 grade point average.

2       82.    Effective Fall Semester 2015, Infilaw and ASLS amended the academic

3   policy to require students to achieve a cumulative 2.2 grade point average to remain in

4   good standing and to graduate.

5       83.    Ms. Young and others who began law school at ASLS before Fall 2015

6   were afforded two semesters in which to either graduate or meet the minimum 2.2 grade

7   point average requirement.

8       84.    Given Ms. Young's record throughout her law school career, and the total

9   number of credits Ms. Young accumulated before Fall 2015, it was impossible for Ms.

10   Young to raise her grade point average to 2.2 within two semesters.

11       85.    ASLS either knew, or should have known that Ms. Young could not

12   achieve a 2.2 grade point average within two semesters when it reinstated her effective

13   Fall 2015.

14       86.    Despite knowledge that Ms. Young did not meet the requirements for

15   reinstatement, and knowing that its own policy changes further diminished Ms. Young's

16   potential for future success in law school, ASLS reinstated Ms. Young.

17       87.    Because she could not raise her cumulative grade point average to 2.2

18   within two semesters, Ms. Young hoped to graduate within two semesters.

19       88.    In order to graduate within two semesters, Ms. Young needed to complete

20   ASLS' mandatory advanced writing requirement.

21       89.    On September 8, 2015, Ms. Young applied to participate in an Independent

22   Study Course that would satisfy her advanced writing requirement.

23       90.    Professor Suzanne Dohrer agreed to faculty advise Ms. Young, knowing

24   that her cumulative GPA under 2.0.

25       91.    On September 9, 2015, Ms. Young learned that the grade point average

26   requirement for participation in an Independent Study course was changed to 2.2.  She

27   also learned that there was no grandfathering provision under the new grade point

28   average requirement, and that in any event, no exception would be made.

9

92.   She was informed that she could not complete her advanced writing requirement until she achieved a 2.2 grade point average.

93.   Although Ms. Young could raise her grade point average to a 2.0 in one semester and then take the Independent Study course in the Spring 2016, it was near impossible for her to raise her grade point average to a 2.2 in only one semester.

94.   Also during the Fall 2015 Semester, Ms. Young added Designing Land Use Policies after the semester began, but before the deadline to add a course.

95.   The Designing Land Use Policies course met once a week and per ASLS policies, students could miss three class sessions.

96.   Ms. Young missed three class sessions and was withdrawn from the course in November 2015.

97.   Ms. Young petitioned for reinstatement into the course based on extenuating circumstances because one of the absences occurred on the first day of class, before she ever enrolled in the course.

98.   In addition, Ms. Young pointed out in the petition that despite the absences, she was doing well in the course, having scored an 83/100 on the mid-term examination and receiving the highest possible score on the first writing assignment for the class.

99.   Marren Sanders, the Associate Dean of Academic Services denied Ms. Young's petition citing a lack of extenuating circumstances.

100.   The stress placed on Ms. Young by the new grade point requirement and being withdrawn from a class she was doing well in, along with the looming realization that she may not be able to graduate was too much for Ms. Young to manage.

101.   Ms. Young quickly decompensated, and was forced to withdraw from law school in November 2015.

102.   After withdrawing from ASLS, Ms. Young required inpatient treatment for psychoses.

103.   Between Summer Semester 2013 and Fall Semester 2015, Ms. Young accumulated $230,000 in law school debt.

**LEGAL ANALYSIS**

**Claim One**

**Violations of the Americans with Disabilities Act and the Rehabilitation Act**

104.    Ms. Young incorporates all other paragraphs of this Complaint as though fully set forth herein.

105.    The Americans with Disabilities Act prohibits private colleges and universities from discriminating against an individual because of disabilities.  42 U.S.C. § 12182.

106.    Section 504 of the Rehabilitation Act of 1972 ("Rehabilitation Act") provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability … be denied the benefits of … any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

107.    Discrimination includes a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 USCS § 12182(b)(2)(A)(ii).

108.    Reasonable accommodations include, but are not limited to, additional time for test taking, not assessing penalties for spelling errors, access to teacher notes, not being called on in class without warning, *J. L. v. Mercer Island Sch. Dist.*, 575 F.3d 1025, 1031 (9th Cir. 2009), "notetaking assistance, a reduced course load, priority registration for a section with afternoon classes, and time and one half on exams in a quiet, distraction-free room."  *Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 124 (D. Mass. 1997).

109.    ASLS is a program receiving Federal financial assistance for purposes of the Rehabilitation Act.

110.    Ms. Young has multiple documented disabilities for which she requested

1   accommodations, including testing in a quiet location, separate testing location,
2   proofreading assistance, and advance copies of professor notes.

3      111.   During the AAMPLE program and throughout her first year of law school,
4   Ms. Young was provided all recommended accommodations.

5      112.   Beginning Summer 2014, she was no longer provided proofreading
6   assistance and was not provided advance copies of professor notes.

7      113.   Ms. Young was also not provided a "quiet location" when she was
8   interrupted by a proctor and forced to restart her Advanced Property Law exam three
9   times.

10     114.    The absence of effective accommodations directly negatively impacted
11  Ms. Young's grades and cumulative grade point average.

12                                **Claim Two**
13                        **(Negligent Misrepresentation)**

14     115.   Ms. Young incorporates all other paragraphs of this Complaint as though
15  fully set forth herein.

16     116.   ASLS made numerous representations to Ms. Young that the school had an
17  80% or better bar pass rate and that its graduates were obtaining employment.

18     117.   At the time the representations were made, the Arizona Commission on Bar
19  Examinations reported that ASLS' bar pass rates were less than 55% for first time takers
20  and less than 50% overall.

21     118.   Although recruiting materials were eventually changed to include a
22  footnote that ASLS' published bar pass rate was in fact an "ultimate" bar pass rate, the
23  phrase "ultimate bar pass rate" was not relayed or defined for existing students in
24  meetings or town hall sessions.

25     119.   In addition, ASLS repeatedly reinstated Ms. Young in violation of its own
26  policies, thereby representing to Ms. Young that record contained sufficient indicators of
27  future success in law school and the ability to pass a bar examination.

28     120.   The representations by ASLS were false, in particular since ASLS changed

the minimum required grade point average to that which was not mathematically achievable by Ms. Young.

121.   ASLS made the representations for the purpose of enticing Ms. Young to enroll at ASLS and to remain enrolled at ASLS.

122.   Ms. Young relied upon ASLS' representations by enrolling at ASLS and remaining enrolled, both to her detriment.

123.   As a result, Ms. Young suffered damages in an amount to be proven at trial, but in any event, no less than $223,000.

**Claim Three**

**(Common Law Fraud)**

124.   Ms. Young incorporates all other paragraphs of this Complaint as though fully set forth herein.

125.   In an effort to entice Ms. Young to enroll and remain enrolled at ASLA, ASLS made representations to Ms. Young about student outcomes and of Ms. Young's chances of success in law school and in passing a bar examination.

126.   Ms. Young reasonably relied on ASLS' assurances that its graduates were passing the bar exam and obtaining jobs, and that she too exhibited a record such that she could graduate and pass a bar examination.

127.   The representations were false, in that nearly half of ASLS graduates do not pass the bar examination on the first time and are not obtaining employment.

128.   In addition, the representations were false as to Ms. Young because ASLS knew from Ms. Young's performance that she could not graduate from its program and knew the likelihood of success on a bar examination was minimal.

129.   Based on the false representations, Ms. Young enrolled and remained

130.   As a result, Ms. Young suffered damages in an amount to be proven at trial, but in any event, no less than $223,000.

**WHEREFORE,** Ms. Young requests Judgment against Defendants as follows;

A.     for compensatory damages;

13

1     B.  for punitive damages;

2     C.  for equitable relief;

3     D.  for attorneys' fees and costs;

4     E.  for interest on any judgment from the date of entry of judgment until

5         paid in full; and

6     F.  for any other damages or remedies the Court deems just and

7         reasonable.

8         **REQUEST FOR JURY TRIAL**

9  Plaintiff demands a jury trial on all claims and issues set forth herein.

10 DATED this 12th day of October 2016.

11         ROBAINA & KRESIN PLLC

12

13

          By /s/ Phil S. Flemming

14            Phil S. Flemming

15            Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28